<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSAN C.,<br><br>         Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, [1] COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 23-00272 (GC)<br><br>**OPINION** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Susan C.'s[2] appeal from the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq.* The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the Commissioner's decision is **AFFIRMED**.

---

[1]     Martin O'Malley became the Commissioner of Social Security on December 20, 2023. When Plaintiff filed this action, the Acting Commissioner of Social Security was Kilolo Kijakazi. This action "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security."  42 U.S.C. § 405(g).  Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this case.

[2]     The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

I. **BACKGROUND**

A. **PROCEDURAL HISTORY**

On December 5, 2019, Plaintiff applied for Social Security Disability Benefits, alleging an onset date of November 18, 2019.  (Administrative Record (AR) 82, 96, 354-360.[3])  On April 29, 2020, the Commissioner denied Plaintiff's claim (*id.* at 82), and on August 19, 2020 it denied the claim again upon reconsideration (*id.* at 96).  On February 4, 2021, the Administrative Law Judge (ALJ) held the first Administrative Hearing.  (*Id.* at 1138-75.)  In a February 23, 2021 decision, the ALJ found that the Plaintiff was not disabled.  (*Id.* at 97-126.)  Plaintiff timely requested that the Appeals Council review the ALJ's decision.  (*Id.* at 248-250.)  On June 28, 2021, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ with specific instructions. (*Id.* at 127-34.)

On October 22, 2021, the ALJ held a second hearing (the Second Hearing).  (*Id.* at 38-71.) In a decision dated November 10, 2021, the ALJ again found that Plaintiff was not disabled.  (*Id.* at 12-37.)  Plaintiff timely requested review of the ALJ's decision from the Appeals Council but was denied.  (*Id.* at 1-6.)  On January 18, 2023, Plaintiff filed the present appeal.  (ECF No. 1.) The Administrative Record was filed on March 20, 2023 (ECF No. 6) and a supplemental transcript on April 13, 2023 (ECF No. 9).  On May 19, 2023, Plaintiff filed her moving brief.  (ECF No. 10.) The Commissioner opposed, and Plaintiff replied.  (ECF Nos. 11 & 13.)

B. **THE ALJ'S DECISION**

In the ALJ's November 10, 2021 decision, the ALJ ruled that Plaintiff was not disabled.

---

[3]      The Administrative Record certified on March 8, 2023 is available at ECF Nos. 6-1 through 6-12.  The additional Administrative Record certified on April 12, 2023 is available at ECF No. 9. This Opinion references page numbers in the Record only and not the corresponding ECF numbers. Page numbers for all other cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

(*See generally* AR 12-37.)  The ALJ set forth the five-step process for determining whether an individual is disabled and entitled to disability benefits, and then examined the evidence at each step.  (*Id.* at 16-27 (citing 20 C.F.R. § 404.1520(a)).)

### 1.    *Steps One through Three of the ALJ's Disability Determination*

First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025 and had "not engaged in substantial gainful activity"[4] since the alleged disability onset date of November 18, 2019.  (*Id.* at 18 (citing 20 C.F.R. § 404.1571).)[5]

Second, the ALJ determined that Plaintiff suffered from the following "severe" impairments: cervical and lumber spine disorder, carpal tunnel syndrome, bilateral epicondylitis, impingement of the bilateral shoulders, depressive disorder, and anxiety disorder.  (*Id.* (citing 20 C.F.R. § 404.1520(c)).)  The ALJ found that these "medically determinable impairments significantly limit the ability to perform basic work activities as required by [Social Security Ruling (SSR)] 85-28."  (*Id.*)  The ALJ also found that Plaintiff had "the following non-severe impairments: hypertension and hyperlipidemia."  (*Id.*)  The ALJ determined that these "are non-severe impairments because the medical evidence of record reflects that they have not caused more than minimal limitation in the claimant's ability to perform basic work activities for 12 consecutive months relevant to this decision."  (*Id.*)  The ALJ further found that Plaintiff's abnormal blood

---

[4]    "Substantial gainful activity is work activity that is both substantial and gainful."  20 C.F.R. § 404.1572.  Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before."  *Id.* § (a).  "Gainful work activity is work activity that [the claimant] do[es] for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."  *Id.* § (b).

[5]    The ALJ found that while "the claimant worked after the alleged disability onset date . . . this work activity did not rise to the level of substantial gainful activity."  (AR 18.)

glucose readings did not result in a medically determinable impairment because "no diagnosis of diabetes has been made" and that Plaintiff's headaches and resultant use of painkillers were symptoms of her underlying neck condition rather than a separate medically determinable impairment.  (*Id.* at 18-19 (citing SSR 19-4p).)

Third, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (*Id.* at 19-20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)  The ALJ considered multiple listed impairments and determined that none were supported by the medical record.  (*Id.* at 19.)  Further, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."  (*Id.*)  In making this determination, the ALJ cited notes and records from Dr. Laura Cohen, Ph.D., the examining psychologist who evaluated the Plaintiff on December 9, 2020.  (*Id.*; ECF No. 10 at 15.)  The ALJ also considered responses from Plaintiff's husband in the Third Party Function Report, and Plaintiff's own descriptions of her limitations in the Function Report.  (AR 19-20 (citing Exs. 5E & 9E).)[6]

### 2.    *Step Four*

At the fourth step, the ALJ outlined his findings of Plaintiff's residual functional capacity (RFC), writing:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8- hour day; stand for 6 hours in an 8-hour day; and walk for 6 hours in an 8-hour day.  The claimant can push/pull as much as she can lift/carry.  The claimant also has the following additional non-exertional limitations: the claimant can handle items frequently

---

[6]    The Court refers to exhibits by the same exhibit numbers used in the Administrative Record.

with the left hand and can handle items frequently with the right hand. She can finger frequently with the left hand, and finger frequently with the right hand. The claimant can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl occasionally. The claimant can never work at unprotected heights; and never work around hazardous moving mechanical parts. The claimant is able to perform simple, routine tasks; and is able to make simple work-related decisions.[7]

[*Id.* at 21.]

Step four requires that the ALJ follow a two-step process in which he must: (1) determine whether there is an "underlying medically determinable physical or mental impairment(s) . . . that can be shown by medically acceptable clinical or laboratory diagnostic techniques . . . that could reasonably be expected to produce the claimant's pain or other symptoms," and then (2) evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work related activities." (*Id.*) In reaching his conclusion regarding Plaintiff's RFC, the ALJ stated that he relied on "careful consideration of the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. § 404.1529 and SSR 16-3p).) The ALJ also considered the Plaintiff's testimony, the medical opinions provided, and prior administrative medical findings. (*Id.* (citing 20 C.F.R. § 404.1520c).)

---

[7]      The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. Accordingly, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (*Id.* § (b).) Further, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." (*Id.*) The regulations find that "[i]f someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." (*Id.*)

In determining Plaintiff's RFC, the ALJ weighed Plaintiff's testimony given in both hearings regarding her impairments.  (*Id.* at 22.)  Plaintiff testified to pain "through her body and legs," headaches, and that her pain "never ends."  (*Id.*)  Plaintiff also testified that her pain impeded her ability to sit, walk, and accomplish the activities of daily life and that "her mental health problems result in symptoms of lack of interest and forgetting things."  (*Id.*)  The ALJ found that after reviewing the evidence, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*)  Further, the ALJ found that Plaintiff's statements regarding the above were "inconsistent with the objective evidence" in the record.  (*Id.*)  To reach this conclusion, the ALJ reviewed, in relevant part: MRI evidence; notes and reports from Plaintiff's physical therapist; notes and reports from Plaintiff's treating occupational medical doctor, Dr. Susan Richman; a June 6, 2018 EMG/ NCV study; and progress notes from Drs. Anna Lee[8] and Luguang Yang, who saw Plaintiff in 2020 and1 2021.  (*Id.* at 22-24.).

The ALJ then "considered the medical opinions and prior administrative medical findings."  (*Id.* at 24.)  First, the ALJ examined the Disability Determination Service's (DDS) evaluation, which determined that Plaintiff was not disabled but that the "claimant's ability to perform handling, fingering, and feeling is limited to occasionally due to carpal tunnel syndrome and epicondylitis."  (*Id.* (citing Exs. 1A & 3A).)  The ALJ found that "the persuasiveness of DDS's opinions [were] reduced, since the DDS consultants did not have the opportunity to examine the

---

[8]      Dr. Anna Lee, M.D., was Plaintiff's primary care physician.  Dr. Lee did not provide a medical opinion reviewed by the ALJ, but her treatment notes and reports were included as part of the overall Administrative Record.  (*See* AR Exs. 33F, 34F, and 37F.)

claimant personally and did not have the opportunity to review the entire record now before [the ALJ]." (*Id.* at 24-25.)  Further, the ALJ found that DDS "offered little explanation as to what factors in the medical evidence of record warranted a reduction of handling and fingering to the occasional level." (*Id.* at 25.)  The ALJ stated that this particular finding "does not appear to be supported by objective medical evidence in the . . . record, since the claimant is noted to have only mild carpal tunnel syndrome, right worse than left." (*Id.*)

Next, the ALJ examined the medical opinions of multiple doctors who treated and evaluated the Plaintiff.  The ALJ first weighed the opinion of Plaintiff's treating psychologist, Dr. Marc Burd, Ph.D.  The ALJ evaluated an October 10, 2020 medical health questionnaire completed by Dr. Burd stating his opinion that the Plaintiff has "persistent depressive disorder and mood disorder (anxiety, depression), due to multiple orthopedic injuries." (*Id.*)  The ALJ also weighed a mental health questionnaire Dr. Burd completed on September 25, 2021 in which he "opined that the claimant has moderate and moderate to marked[9] mental health limitations except for a marked limitation in ability to perform at a consistent pace without rest periods of unreasonable length or frequency." (*Id.*)  Dr. Burd further opined Plaintiff "would be absent more than 3 times a month." (*Id.*)  The ALJ found that Dr. Burd's "mental opinion is not supported by or consistent with his own treatment records, which show largely normal mental status examinations," and that "Dr. Burd . . . did not provide any explanation justifying the limitations in his latest opinion or absences." (*Id.*)  "In light of reports noting normal examination findings with regard to memory, concentration, and attention," the ALJ found "that Dr. Burd's testimony that the claimant's mental impairments are totally disabling is not persuasive." (*Id.*)  The ALJ found "Dr. Burd's opinion has

---

9        A marked mental limitation is a seriously limited ability to function independently, or effectively, and on a sustained basis.  (AR 19.)

significantly reduced persuasiveness." (*Id.*)

Next, the ALJ evaluated a December 9, 2020 questionnaire from Dr. Cohen, in which she found the Plaintiff had "depressive disorder secondary to a general medical condition, generalized anxiety disorder with panic attacks and pain disorder with related psychological factors." (*Id.*)  Dr. Cohen found the Plaintiff was "unable to work at this time due to poor concentration from her pain" and that Plaintiff had "moderate to marked limitation in several areas of workplace functioning." (*Id.* at 26.)  Dr. Cohen estimated Plaintiff was likely to be absent from work more than three times per month. (*Id.*)  The ALJ found Dr. Cohen's opinion was not "supported by or consistent with the objective medical evidence, including Dr. Cohen's own records," and that "there is no explanation as to how all of these degrees of limitation [found in Ex. 23F at 4] were reached, especially given that this entire . . . opinion is based on a single exam." (*Id.* (citing Dr. Cohen's opinion at Ex. 23F and the related exam at Ex. 22F).)  The ALJ also noted that there are "several instances" in the medical records of Drs. Richman and Lee where the doctors performed the diagnostic Patient Health Questionnaire-9 (PSQ-9) and the Plaintiff "was not found to be depressed at all." (*Id.*)  Further, Dr. Burd's Mental Status Exams (MSE) "are largely within normal limits or only show no more than moderate limitation," contradicting Dr. Cohen's findings. (*Id.*)  The ALJ found that "[t]here is some degree of limitation as to mental, but not to the degree opined" and that the "persuasiveness [of Dr. Cohen's opinion] is therefore significantly reduced." (*Id.*)

The ALJ then reviewed a January 3, 2021 report from examining physiatrist[10] Dr. Luguang Yang, M.D.  Dr. Yang stated the Plaintiff "has cervical radiculopathy; lumbago; bilateral shoulder tendonitis; bilateral epicondylitis and bilateral carpal tunnel syndrome." (*Id.*)  The ALJ interpreted Dr. Yang's opinion to be "essentially a reduced light RFC with excessive absences and occasional

---

[10]     Dr. Yang is board-certified in physical medicine and rehabilitation. (ECF No. 10 at 14).

handling/fingering, but never reaching." (*Id.*)  The ALJ found that Dr. Yang's opinion "is not supported by the exam findings in the records at Exhibit 5F or Exhibit 27F, or elsewhere in the medical evidence of record" and therefore is "not persuasive." (*Id.*)

The final medical opinion weighed by the ALJ was that of Dr. Susan Richman, M.D., Plaintiff's treating internist, with a specialty in occupational medicine.  The ALJ reviewed a September 1, 2020 questionnaire and September 2, 2020 pain assessment completed by Dr. Richman.  (*Id.* at 27 (citing Exs. 18F & 36F).)  Dr. Richman opined in these records "that the claimant is limited to less than sedentary work" and "that the claimant is totally disabled." (*Id.*)  At the Second Hearing, Dr. Richman testified that Plaintiff's bilateral carpal tunnel syndrome, epicondylitis, and issues with her neck, shoulders, and back were caused by Plaintiff's previous work.  (*Id.*)  Dr. Richman testified that "that the claimant's upper body has been ruined and that she cannot perform self-care, do ADL's, or work at her job." (*Id.*)  The ALJ, after reviewing Dr. Richman's treatment notes and reports, found that Dr. Richman's opinion was "not consistent with or supported by the objective medical evidence, including Dr. Richman's own treatment records." (*Id.* (citing, among others, Exs. 2F, 8F, 10F, 15F, 17F).)

At the hearing, defense counsel asked Dr. Richman to explain the basis for her opinion regarding Plaintiff's disability given that diagnostic testing in the record indicated only mild carpal tunnel syndrome.  (*Id.*)  Dr. Richman "responded that [carpal tunnel syndrome] does not improve if you keep continuing with the aggravating factor and that she believes the NYU EMG study uses different parameters," and therefore, "the claimant's [carpal tunnel syndrome] should be noted as moderate to severe and not mild." (*Id.*)  The ALJ was not persuaded by Dr. Richman's testimony, and found that "Dr. Richman's explanation, coupled with her exam findings . . .would not override the objective medical findings in the record." (*Id.*)  The ALJ also found Dr. Richman's opinion

was inconsistent with other findings in the record, including Dr. Lee's examinations, which revealed "within normal limits musculoskeletal exams and independence in ADLs and ambulation." (*Id.* (citing Exs. 16F and 35F).) The ALJ found Dr. Richman's opinion had reduced persuasiveness. (*Id.*)

Next, the ALJ found that Plaintiff "is unable to perform any past relevant work" based on the testimony from the vocational expert at the Second Hearing. (*Id.* at 28 (citing 20 C.F.R. § 404.1565).)

### 3.   *Step Five*

At the fifth and final step, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 28 (citing 20 C.F.R. §§ 404.1569, 404.1569a(a)).) These jobs, based upon the vocational expert's testimony at the Second Hearing, include: photocopy machine operator, collator operator, and laundry sorter. (*Id.* at 29.) The ALJ concluded that Plaintiff "has not been under a disability, as defined by [the Social Security Act], from November 18, 2019 through the date of this decision." (*Id.* at 29 (citing 20 C.F.R. § 404.1520(g)).)

## II.   LEGAL STANDARD

### A.   DISABILITY DETERMINATION

An individual is "disabled" and therefore eligible for disability insurance benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot

engage in his previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner for the fifth step. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

*First*, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b).

*Second*, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *see also id.* at § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of them automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

*Third*, if the claimant satisfies her burden at steps one and two, the Commissioner then considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart

P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If the claimant can make a sufficient showing at step three, she is deemed disabled. *Id.* § 404.1520(a)(iii).

*Fourth*, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 404.1520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner also assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

*Fifth*, if the claimant is incapable of performing past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At this step, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see Poulos*, 474 F.3d at 92.

**B.**     **STANDARD OF REVIEW**

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence.  *Id.*; *see also Poulos*, 474 F.3d at 91.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence."  *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  This limitation applies "even if [the court] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  The court must "review the record as a whole to determine whether substantial evidence supports a factual finding."  *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 431 (3d Cir. 1999)).  "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

**III.     DISCUSSION**

On review of the ALJ's decision (*see* AR 12-37) and the Administrative Record (*see generally* AR), the Court finds good cause to affirm the Commissioner's decision.  In reaching a

decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706. Here, the ALJ provided extensive and thorough reasoning for his findings, and the Court therefore determines that the ALJ's findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances two principal arguments that appear to focus on Step Four of the ALJ's determination: (1) the ALJ failed to properly evaluate the medical opinion evidence and failed to properly determine Plaintiff's RFC; and (2) the ALJ failed to properly evaluate Plaintiff's testimony. (ECF No. 10 at 2.) The Court will address these arguments in turn.

## A.   THE ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE AND RFC DETERMINATION

Plaintiff primarily objects to the ALJ's findings at step four of the disability determination process — specifically, the ALJ's evaluation of medical opinion evidence and his determination of Plaintiff's RFC. (*Id.* at 19-31.) At step four, the Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [his or her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 404.1520(c), 404.1521, and 404.1523. 20 C.F.R. § 404.1545(a)(1)-(3). The Commissioner also assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3).

### 1.   *Evaluation of Medical Opinion Evidence*

First, Plaintiff argues that the ALJ's evaluation of the medical opinion evidence is "fatally flawed." (ECF No. 10 at 21.) Specifically, Plaintiff contends that the opinions of Dr. Richman, Plaintiff's occupational medicine specialist, and Dr. Yang, her examining physiatrist, are "well-supported and consistent." (*Id.*) Plaintiff asserts that the ALJ had no basis to find that Dr.

14

Richman's opinion had "reduced persuasiveness" because some of Dr. Richman's "treatment records did not contain examination findings and . . . are otherwise not supported by sufficient objective or clinical findings." (*Id.* at 20-21 (citing AR 27).) Plaintiff also disagrees with the ALJ's finding that Dr. Richman's opinions "conflict[ed] with [Plaintiff's] course of 'conservative' treatment." (*Id.* at 21 (citing AR 27).)

Plaintiff also challenges the ALJ's finding that Dr. Yang's opinions regarding Plaintiff's "physical impairments" were "'not persuasive' because they are allegedly 'not supported by the exam findings in the records.'" (*Id.* (citing AR 26).) According to Plaintiff, the opinions of Drs. Richman and Yang were "not only consistent with each other but also treatment records," and the ALJ failed to afford these consistencies the proper weight as required by 20 C.F.R § 404.1520(c)(2). (*Id.* at 22.) Plaintiff further argues the ALJ "erred by disregarding the explanation provided by the treating doctor" and "by rejecting the treating source opinions on the basis that they conflict[ed] with [Plaintiff's] course of 'conservative' treatment." (*Id.* at 21, 23.) Plaintiff contends that by finding that the opinions of Drs. Richman and Yang were not persuasive, the ALJ relied on "his lay conclusion regarding what medical findings or treatment would be appropriate for [Plaintiff] to establish disability." (*Id.* (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).) The ALJ should have compared the consistency of the abnormalities in Drs. Richman's and Yang's opinions, and placed too much weight on the evidence that Plaintiff engages in activities of daily living. (*Id.* at 22-23.)

As a secondary argument, Plaintiff contests the ALJ's finding that Dr. Burd's opinion had "significantly reduced persuasiveness" and was neither supported by "sufficient explanation nor consistent with mental status examinations" and treatment notes. (*Id.* at 26 (citing AR 25).) Nor does Plaintiff agree with the ALJ's finding that Dr. Cohen's opinion was "not persuasive." (*Id.*

(citing AR 26).)   Plaintiff asserts that the opinions of Plaintiff's psychologists, Drs. Burd and Cohen, were "well-supported" and based on evidence of mental health issues, and that "[t]he ALJ erred by wholly disregarding the explanation provided by [the doctors] regarding [Plaintiff's] mental limitations in violation of 20 C.F.R. § 404.1520c(c)(1)."   (*Id.* at 26-27.)

Under 20 C.F.R. § 404.1520c, an ALJ is "required to consider medical opinions and determine persuasiveness of the opinions" by considering specific factors listed in the Regulations. (*Id.* at 19-20 (citing 20 C.F.R. § 404.1520c(a)).)   These factors include: (1) "supportability"; (2) "consistency"; (3) "relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship"; (4) "specialization"; and (5) "'other' relevant factors".   (*Id.* at 20 (citing 20 C.F.R. § 404.1520c(c)).)

Plaintiff largely relies on *Beerhalter v. Commissioner of Social Security*, Civ. No. 19-17561, 2020 WL 5627015, at *6-9 (D.N.J. Aug. 18, 2020) for the proposition that "remand [is] required when it was not clear the ALJ considered all the factors applicable to the medical opinions." (ECF No. 10 at 20.)   Plaintiff's position is that "the ALJ failed to articulate how he considered evidence relevant to the factors of supportability and consistency when evaluating opinions in the record from Drs. Richman and Yang despite the Commissioner stating that these are the most relevant factors to the persuasive value of all medical opinions."   (*Id.* at 23 (citing 20 C.F.R. § 404.1520c(b)(2)).)   Further, Plaintiff contends that, like the ALJ in *Beerhalter*, the ALJ here did not properly consider the "length, frequency, and nature of treatment" in determining the persuasiveness of the medical opinions.   (*Id.* at 24.)   "The ALJ's failure to examine the relevant factors much less articulate how persuasive he found the opinions from the treating and examining specialists based on the relevant factors, renders the Commissioner's decision erroneous."   (*Id.*

16

(citing *Beerhalter*, 2020 WL 5627015).)

The Commissioner counters that the ALJ's decision was supported by substantial evidence and therefore must be sustained.  (ECF No. 11 at 17 (citing *Hartranft*, 181 F.3d at 360).)  The ALJ extensively provided his reasoning regarding each step of his analysis including the weight of each medical opinion, and supported that reasoning with extensive citation to the record.  (*Id.* at 19-21.)  Further, the Commissioner contends that regulations do not require the ALJ to use particular language or "magic words" in his decision, and that "an ALJ need not use the words 'supportability' or 'consistency' in [his] decision, so long as the ALJ analyzes these factors."  (*Id.* at 17 (citing *Todd A. v. Kijakazi*, Civ. No. 3:20-594, 2021 WL 5348668, at *4-5 (E.D. Va. Nov. 16, 2021)).)

The Court finds that the ALJ properly articulated his evaluation of the medical opinions under the pertinent regulations, and sufficiently explained "the weight given to physician opinions and the degree to which a claimant's testimony is credited."  *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404.1527(f)(2)(ii)); *see also Candace D. v. Kijakazi*, Civ. No. 23-01151, 2024 WL 913218, at *7 (D.N.J. Mar. 4, 2024) ("[A] treating source's opinion will be given controlling weight only if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' A treating source's conclusory medical opinions, however, will not be given controlling weight." (quoting *Houston v. Sec'y of Health & Hum. Servs.*, 736 F.2d 365, 366-67 (3d Cir. 1984))).  Here, the ALJ thoroughly explained why he found the opinions of Drs. Richman, Yang, Burd, and Cohen to be unpersuasive and inconsistent with the medical record, objective medical evidence in the form of diagnostics, and even those physicians' own treatment and progress notes.  (*See* AR 22-27.)

In evaluating the persuasiveness of Dr. Yang's opinions, the ALJ examined their

consistency with Dr. Yang's two examinations of Plaintiff: Exs. 5F & 27F.  (*Id.* at 26.)  In an examination on January 3, 2021 — the same day Dr. Yang issued her medical opinion regarding Plaintiff's limitations — Dr. Yang found that Plaintiff had "[n]ormal muscle tone and deep tendon reflex" with "[n]o significant muscle atrophy."  (*See* AR 856 (Ex. 27F).)  Further, in that same examination, Dr. Yang recommended: (1) physical therapy, (2) a home exercise program with stretching exercises, and (3) acupuncture.  (*Id.*)  Dr. Yang's examination and recommendations do not discuss or support the limitations raised by the January 3, 2021 report, namely that "[t]he claimant can never/rarely use the bilateral arms for reaching and can occasionally use the bilateral hands/fingers for gross or fine manipulation."  (*Id.* at 26 (citing Ex. 28F).)  The substantial evidence offered by the Plaintiff's medical records surpasses the standard for review, which only requires evidence "a reasonable mind might accept as adequate to support" the ALJ's conclusion.  *See Reefer*, 326 F.3d at 379 (internal quotation marks and citations omitted).

This pattern continues with the ALJ's review of Dr. Richman's medical opinion.  The ALJ contrasted Dr. Richman's ongoing reports of Plaintiff's symptoms as persistent "despite weekly acupuncture, physical therapy, and cupping," with contemporaneous progress notes from Dr. Lee, which "consistently note that the claimant had full range of motion of the neck and extremities, normal muscle tone, a normal gait, and normal neurologic findings."  (AR 23 (citing Exs. 7F, 29F, 33F, and 34F).)  As discussed previously, Dr. Richman testified in front of the ALJ regarding her opinion of the Plaintiff's physical limitations.  (*Id.* at 27.)  While testifying, Dr. Richman addressed a disparity between her assessment of the Plaintiff's capacity and the objective medical evidence offered by the NYU EMG study, which diagnosed Plaintiff's carpal tunnel syndrome as "mild."  (*Id.* (referring to Ex. 4F).)  The ALJ did not find Dr. Richman's testimony regarding this disparity persuasive enough to "override the objective medical findings in the record."  (*Id.*)  The ALJ also

compared Dr. Richman's findings that Plaintiff's carpal tunnel syndrome should be considered "moderate to severe" rather than "mild" with contradicting exam results from Plaintiff's general practitioner, Dr. Lee.  (*Id.* (citing Exs. 16F and 35F).[11])

Turning next to the ALJ's treatment of the mental health opinions from Drs. Cohen and Burd, the ALJ also evaluated: contemporary evidence from those doctors' own treatment notes; diagnostics performed by the other physicians evaluating the Plaintiff; and the Plaintiff's own testimony regarding her daily activities and abilities, including maintenance of her social relationships and activities with family members and participation in activities such walking and gardening.  (AR 25-26.)

Unlike the case in *Beerhalter*, where the ALJ gave weight to specific medical opinions over others based on only minimally different dates of examination, and where the ALJ did not explain the factors underlying his evaluation of the medical opinions, here the ALJ explicitly based his evaluation of each medical opinion on contemporary treatment notes and objective medical evidence.  *See generally Beerhalter*, 2020 WL 5627015.  Here, the ALJ also "explicitly assign[ed] a weight" to each medical opinion he evaluated.  *See id.* at *8.  Further, unlike in *Beerhalter*, there is no substantively conflicting probative evidence in the record.  *Id.*  In this case, the objective medical evidence, medical treatment progress notes, and Plaintiff's exams are relatively consistent, and "consist[] of more than a mere scintilla of evidence."  *Ginsburg*, 436 F.2d at 1148 (internal quotation marks and citation omitted).  It is the ALJ's prerogative to determine the persuasiveness of medical opinions, as long as he articulates the basis for his findings in a manner consistent with

---

[11]     While the ALJ did not cite to Dr. Lee's examinations at Exs. 33F, 34F, & 37F, the two exhibits that he did cite to — Exhibits 16F, a report from Plaintiff's physical therapist, and 35F, an evaluation from Dr. Yang — also support the ALJ's overall point regarding Dr. Richman's medical opinion and its inconsistency with Plaintiff's medical record.

the regulations.  Ultimately, "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records . . . '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. § 404.1527(d)(1)-(2)) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

### 2.      *The ALJ's Subsequent RFC Determination*

Plaintiff argues that once the ALJ erred in disregarding the medical opinions, he then improperly "concluded [the Plaintiff] could perform a range of light exertional work."  (ECF No. 10 at 24.)  Plaintiff contends that "[i]t is unclear what evidence supports [the RFC] conclusion" given that the ALJ "declined to find any other medical or even non-medical evidence in the record persuasive."  (*Id.*)  Further, Plaintiff argues that the ALJ erred in his finding that Plaintiff "was mentally limited to perform simple, routine tasks, and able to make simple work-related decisions" following his determination regarding the persuasiveness of the opinions from the mental health specialists.  (*Id.* at 30.)  Plaintiff quotes SSR 96-8p, which says in part, "[t]he RFC assessment *must* include a narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  (*Id.* at 25 (quoting SSR 96-8p) (emphasis in original).)  Plaintiff contends that the ALJ did not do so here, and that "the only logical conclusion is that the ALJ impermissibly interpreted the medical data into his pre-conceived RFC that he created for Plaintiff."  (*Id.*)

According to the Commissioner, "[t]he ALJ did exactly what he was supposed to do.  He considered the entirety of the record evidence, including the various medical opinions, and explained how he evaluated the medical opinions in light of the most important factors of supportability and consistency . . . and performed his duty as the finder of fact by independently

assessing Plaintiff's residual functional capacity." (ECF No. 11 at 21 (citing 20 C.F.R. § 404.1520c(b)(2)).)

The Court disagrees with Plaintiff's argument that the ALJ's RFC determination is "[a]bsent a reference to any medical findings or even persuasive non-medical findings." (*See* ECF No. 10 at 25.) Indeed, the ALJ discusses in detail such medical evidence as Plaintiff's MRI findings, an EMG/NCV study, and the progress notes of all of Plaintiff's doctors. (*See* AR 21-27.) Moreover, the Court finds that the ALJ's assessment that Plaintiff can perform limited light work was based on substantial evidence in the record and should be affirmed.

An ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function . . . is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see also Diciano v. Commissioner of Social Security*, Civ. No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis."). Further, "[t]he ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

Here, as detailed above, the ALJ clearly identified the specific medical evidence, testimony of activities of daily living, and medical opinions on which he relied and evaluated to make his determination. (AR 21-27.) Therefore, the Court finds that the ALJ sufficiently examined the evidence and discussed his reasoning behind his RFC determination based on the whole record, and the Court will thus affirm. *See Wellington W. v. Kijakazi*, Civ. No. 22-05042, 2023 WL

5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record . . . and provided a clear presentation of her reasoning . . . ."); *Jose S. v. Kijakazi*, Civ. No. 19-19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) ("The ALJ's detailed examination of the objective medical evidence . . . indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record.'").

### B.   THE ALJ'S EVALUATION OF PLAINTIFF'S TESTIMONY

At step four, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.)  Plaintiff contends that the ALJ made a "conclusory finding" and that "the conclusion that no clinical and/or objective evidence supports a finding of physical or mental disability for [Plaintiff] is roundly contradicted by the medical evidence based on every treating and examining doctor."  (ECF No. 10 at 32-33.)  Further, Plaintiff argues that the "Commissioner's Regulations on evaluating a claimant's subjective statements, 20 C.F.R. § 404.1529, state that a claimant's allegations cannot be rejected solely 'because the available objective medical evidence does not substantiate [the claimant's] statements.'"  (*Id.* at 33.)  In addition, the ALJ impermissibly considered Plaintiff's activities of daily living to contradict a finding of disability.  (*Id.*)

The Commissioner's brief in opposition highlights the ALJ's specific examination of inconsistencies between the medical record and Plaintiff's testimony regarding both her physical and mental symptoms and limitations.  (ECF No. 11 at 23-24.)  The Commissioner argues that "the ALJ reasonably found that Plaintiff's allegations of completely debilitating symptoms and

limitations should not be fully credited in assessing her residual functional capacity." (*Id.* at 24.) The Commissioner also contends that the ALJ "permissibly considered the objective medical evidence as one factor, among others, in evaluating the intensity and persistence of Plaintiff's complaints," and "did not find that Plaintiff was not disabled solely based on her daily activities." (*Id.* at 25.) Rather, "he reasonably considered them in conjunction with the overall record evidence in evaluating her claims of disabling symptoms and limitations." (*Id.*)

The Court agrees with the Commissioner that the ALJ's findings were not conclusory and were based on substantial evidence in the record. The ALJ extensively discussed his reasoning in evaluating Plaintiff's subjective evidence. For example, the ALJ examined the Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms of her cervical and lumbar spine disorder. (AR 22.) The ALJ reviewed objective medical evidence of her disorder including: MRIs in 2013, 2015, and 2018; a 2018 EMG/ NCV study; and Plaintiff's physical therapy reports. (*Id.* (citing Exs. 3F, 4F, & 32F).) When evaluating Plaintiff's symptoms regarding her carpal tunnel syndrome, bilateral epicondylitis, and impingement of the bilateral shoulders, the ALJ reviewed Dr. Richman's reports of positive Phalen's and Tinel's signs and the 2018 EMG/ NCV study showing "only mild bilateral carpal tunnel syndrome." (*Id.* (citing Exs. 10F, 15F, & 17[F]).) The ALJ also reviewed notes from Plaintiff's physical therapist showing that Plaintiff continued to do significant housework (Ex. 24F), Dr. Lee's notes and progress reports (Exs. 7F, 33F, & 34F), and Dr. Yang's evaluation which focused on avoiding "repetitive, forceful or strenuous activities" but did not find Plaintiff to be disabled (Ex. 35F). (*Id.* at 22-23.)

Further, while "'any statements of the individual concerning his or her symptoms must be carefully considered,' . . . the ALJ is not required to credit them." *Chandler*, 667 F.3d 356 at 363 (citing SSR 96–7p (July 2, 1996) and 20 C.F.R. § 404.1529(a)). The ALJ had substantial evidence

throughout the administrative record showing that Plaintiff's testimony regarding her limitations and symptoms was inconsistent with the medical record, and the ALJ was properly within his role to weigh those inconsistencies.  The regulation entitled "How we evaluate symptoms, including pain," states, in relevant part:

> [I]n evaluating the intensity and persistence of [a claimant's] symptoms, including pain, we will consider all of the available evidence, including [a claimant's] medical history, the medical signs and laboratory findings, and statements about how [a claimant's] symptoms affect [the claimant]. We will then determine the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [a claimant's] ability to work.

> [20 C.F.R. § 404.1529.]

Indeed, the ALJ's detailed explanation of how he weighed Plaintiff's testimony against the other medical evidence in this case is fully consistent with the requirements of 20 C.F.R. § 404.1529. And the ALJ permissibly considered Plaintiff's activities of daily life as probative evidence of non-disability.  *See Cunningham v. Commissioner of Social Security*, 507 F. App'x 111, 118 (3d Cir. 2012).  The Court will thus affirm.

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, the ALJ's decision to deny benefits is **AFFIRMED**.  An appropriate Order follows.

Dated: March 28, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

24